[Civ. No. 17214.    First Dist., Div. One.    Mar. 28, 1957.]

HOBERT VAN WINKLE et al., Respondents, v. CITY OF KING et al., Appellants.

J. T. Harrington, Gordon L. Daley and Hoge, Fenton &
Jones for Appellants.

Mandl and Atteridge for Respondents.

AGEE, J. pro tem.*—This is an appeal from a judgment
for plaintiffs and from an order denying the respective mo-
tions of defendants city of King and Edward A. Thompson,
doing business as By-Chemical Products Company, for judg-
ment in their favor notwithstanding the verdict of the jury

*Assigned by Chairman of Judicial Council.

against them. The action is one for wrongful death brought by the parents of a minor child who was drowned in a pool of water.

In 1939 or 1940 the city of King acquired a large tract of land just outside of its corporate limits by means of a general bond issue. In 1940 the city leased the property to the United States government for the purposes of constructing defense plants and an airport for the training of pilots. During World War II the government constructed upon this property hangars, runways, barracks, a sewage disposal plant, butane tanks and other buildings. In 1947 the lease expired and the property together with the improvements reverted to the city. All of this property was thereafter annexed to the city prior to the drowning involved herein.

On August 6, 1947, the city and Thompson entered into a lease agreement whereby a portion of this property was leased to Thompson for a period of 10 years at a rental of $1.00 per year. The lease recited that the leased premises were to be used "for the purpose of manufacturing chemical and chemical by-products." However, the city authorized Thompson to rent the living quarters in the barrack buildings to individual families until the housing shortage subsided.

The lease expressly excluded the sewage disposal plant from the premises leased to Thompson but permitted him the use of its facilities and (apparently in return) he was required to maintain it at his own expense. The sewage plant also served the hangars at the airport and some other housing units owned by the city which were located three-fourths of a mile therefrom. The city continued to inspect the plant four or five times a year, furnish the chlorine needed in the plant's operation, and assist whenever any repairs to the machinery or equipment became necessary.

On or about January 1st, 1955, Thompson rented a unit in one of the barracks to respondents and their three minor children, the oldest of whom was 7. The barracks were located on a plateau. The sewage plant was located below this plateau. A stairway extended from the level of the plateau down to the level of the land upon which the sewage plant was located. The difference in altitude between the two levels is about 60 feet, the angle of the slope from the plateau down to the lower level being approximately 45 degrees, and the stairway being approximately 85 feet in length.

The distance from the unit occupied by respondents to the plant on a direct line is approximately 950 feet. The distance

from said unit to the top of the stairway on a direct line is approximately 880 feet.

The disposal plant includes two rock filter beds which adjoin two rectangular-shaped concrete basins filled with sewage water. The rock filter beds are higher than the pools of sewage water.

On the afternoon of February 3, 1955, the respondents' son, Philip, who was then 2 years and 10 months of age, accompanied by Warren Leader, 7 years of age, and two little girls, 7 and 6 years of age, went to the edge of the plateau at the top of the stairway. The girls stayed there but the boys went down the steps. Philip went onto the rock filter beds and began throwing rocks therefrom into the water pools. Warren started back up. On the way he turned around and looked back and saw Philip lying in one of the pools of water. Efforts to rescue him were unsuccessful.

The main issue in this case is the status of the deceased child while on the plant premises. Appellants contend that he was a trespasser, to whom they owed only a duty to refrain from inflicting wanton or wilful injury. (*Demmer* v. *City of Eureka*, 78 Cal.App.2d 708, 712 [178 P.2d 472].) They correctly point out that there would be no liability even to a licensee where, as here, there is no evidence or claim of active conduct by them constituting negligence. (*Free* v. *Furr*, 140 Cal.App.2d 378, 383 [295 P.2d 134].) Respondents admit that there was no express invitation to Philip to come upon the plant premises but assert that such invitation can be implied from the circumstances.

The circumstances upon which respondents rely are: (1) the invitation to rent living quarters carried with it an invitation to the tenants and their children to play and be in the surrounding area, including the sewage plant; (2) public property is open to everyone and the sewage plant was owned by the city; (3) the mere presence of the stairway was an invitation to the plant. We will discuss these points in the order made.

Certainly said children were authorized to and it was their general custom to play in the area occupied by the barracks which were under lease to their landlord, Thompson. But to travel a distance of 850 or 900 feet to reach the top of a stairway 85 feet in length, descend such stairway, and then proceed to a sewage plant in an isolated location is stretching an implied invitation beyond the bounds of reason. As before pointed out, the premises leased by Thompson did

504

not even include the sewage plant and he had no right or authority to invite anyone there for purposes not connected with the use or maintenance of the plant. Neither Thompson nor the city even knew that anyone ever visited the plant for play or sightseeing purposes. ▮ While the extent of an implied invitation is generally one of fact rather than of law, when there is neither dispute nor conflict as to the essential facts, and the evidence and the only reasonable inferences therefrom inescapably lead to the conclusion that the area of any invitation has been substantially overstepped, the question becomes one of law. (*Powell* v. *Jones,* 133 Cal. App.2d 601, 607 [284 P.2d 856].)

▮ Even if the deceased child is treated as a licensee, whose presence was tolerated by appellants, there would be no liability upon them unless they committed some overt act toward him amounting to negligence. ▮ As was said in *Ward* v. *Oakley Co.,* 125 Cal.App.2d 840, at 844 [271 P.2d 536], where two young boys were drowned in a slough on property of the defendants: ''Where a person goes on premises of another without invitation and as a bare licensee, and the owner of the property acquiesces in his presence, if injury is sustained by reason of a mere defect in the premises the owner is not liable since the licensee takes all the risks arising from the condition of the premises.''

The same question was considered in *Polk* v. *Laurel Hill Cemetery Assn.,* 37 Cal.App. 624 [174 P. 414], where an 8-year-old boy was drowned in an open unguarded reservoir maintained by defendant in its cemetery. The defendant admitted that it extended a general invitation to the public to visit the cemetery and that this invitation included children. It was also admitted that the children residing in the neighborhood customarily played in the cemetery and that, among other activities, they cast stones into the reservoir. The court held, *as a matter of law,* that the invitation only extended to the purposes for which the cemetery was intended and concluded, as follows: ''When, therefore, they [the children] were in the cemetery for the purpose of playing only, they were not there for any purpose to which the cemetery is put or designed to be put, nor were they there under the general privilege accorded or general invitation extended to the public to visit the cemetery.'' (Pp. 631-632.)

▮ The argument that public property is open to everyone is obviously incorrect if this is meant to include public property which is not customarily open to the public or to

which the person in question has gone for a purpose not connected with the use of such property. (*Demmer* v. *City of Eureka,* 78 Cal.App.2d 708, 711 [178 P.2d 472].) Respondents cite *Gibson* v. *County of Mendocino,* 16 Cal.2d 80 [105 P.2d 105], in support of their statement that: "The property was public property, [citation], open for everyone; it was not private property." In this case, the county was held liable for injuries sustained by a plaintiff as the result of the defective condition of the entrance way to the county courthouse. Plaintiff did not intend to transact any business in the courthouse and was merely using it as a passage-way. The court pointed out that "it was the general custom for the residents of that community to cross through the court house as a 'short cut' to reach the streets lying to either side of the building." (P. 84.) Thus, by general custom, plaintiff's use of the courthouse premises was authorized by the county. This is a far cry from the factual situation involved herein. There is not the slightest evidence of any such custom or authorization in the instant case. As was said in *Betts* v. *City & County of San Francisco,* 108 Cal.App.2d 701, at 704 [239 P.2d 456], in distinguishing *Gibson* v. *County of Mendocino, supra:* "A different question arises when public property is being used by a trespasser for a forbidden private purpose. . . . In such a case it would seem clear that he would not come under the terms of the Public Liability Act."

▮ Respondents also argue that "the mere presence of a stairway to the rocks and pools was an open invitation to the area," citing *Oettinger* v. *Stewart,* 24 Cal.2d 133 [148 P.2d 19, 156 A.L.R. 1221]. In that case, the plaintiff was injured on steps leading from the sidewalk to an apartment house where she had gone to inquire as to the rental of an apartment. There was in fact no vacancy and plaintiff had no information that there was. However, she was held to be an invitee. The court said, at page 136: "Plaintiff came upon the premises as a prospective tenant—*a purpose connected with the business conducted thereon,* and she, therefore, was a business visitor." (Emphasis added.) Certainly, the two boys in the instant case did not go upon the plant premises for any "purpose connected with the business conducted thereon." And the cited case is not authority for the proposition that the stairway in the instant case constituted an "open invitation" to the sewage plant. The stairway thereto obviously was for the purpose of providing access

to the sewage plant for those who had business to transact there, such as maintenance and repair.

█ It must be kept in mind that, in determining whether the deceased child in this case was a trespasser, he is to be treated in the same manner as an adult. (19 Cal.Jur., Negligence, § 57, p. 624; *Lake* v. *Ferrer*, 139 Cal.App.2d 114, 117 [293 P.2d 104].) The issue can be more clearly visualized by merely stating that an adult who went upon the premises of the sewage plant for the purpose of sightseeing or taking rocks from the rock filter beds and throwing them into the water pools could hardly claim that he was an invitee, either express or implied.

Finally, respondents contend that the judgment may be upheld under the doctrine of "attractive nuisance," more appropriately expressed as "injuries to trespassing children." (*Marino* v. *Valenti*, 118 Cal.App.2d 830, 842 [259 P.2d 84].) The doctrine, with the exception hereinafter discussed, has never been held in this state to apply to pools of water, whether natural or artificial. (*Peters* v. *Bowman*, 115 Cal. 345, 355 [47 P. 113, 598, 56 Am.St.Rep. 106], pool of water accumulating by reason of embankment thrown up by city; *Polk* v. *Laurel Hill Cemetery Assn.*, *supra*, 37 Cal.App. 624, 634, unguarded reservoir maintained in a cemetery; *Reardon* v. *Spring Valley Water Co.*, 68 Cal.App. 13, 16 [228 P. 406], unguarded reservoir maintained in residential district; *King* v. *Simons Brick Co.*, 52 Cal.App.2d 586, 589 [126 P.2d 627], unguarded pool of water accumulating in clay pit dug by defendant; *Demmer* v. *City of Eureka*, *supra*, 78 Cal. App.2d 708, 710, pool of water by reason of embankment thrown up by city; *Betts* v. *City & County of San Francisco*, *supra*, 108 Cal.App.2d 701, 703, reservoir maintained by city in playground area of park; *Ward* v. *Oakley Co.*, *supra*, 125 Cal.App.2d 840, 845.) █ As stated by Justice McComb in the case last cited, at page 845: "It is settled that a body of water, natural or artificial, does not constitute an attractive nuisance which will subject the owner to liability for trespassing children who are attracted thereto and are drowned."

Two recent cases have affirmed this statement. In *Lake* v. *Ferrer* (1956), *supra*, 139 Cal.App.2d 114, a 2½-year-old boy was drowned in the next-door-neighbor's swimming pool. A general demurrer to the complaint was sustained without leave to amend. The judgment thereupon entered was affirmed and a hearing denied by the Supreme Court. The complaint alleged that the decedent and a neighbor's 4-year-

old child were playing in the former's backyard; that his parents did not know of the existence of the pool because of its position and the surrounding foliage but that at a point in their back yard some 30 feet distant from the pool, the children could see the top of a lustrous, metallic ladder located in one corner of the pool; that they were attracted by the ladder and went onto respondent's property and up to the pool; that decedent either climbed into the pool by means of the ladder or fell therein while playing about the pool; that at the time of the drowning and for four months prior thereto, respondent knew, or had reason to know of the presence next door of the decedent, of the unlikelihood that such a child would have reason to realize the danger of falling into the pond, of the ignorance of the appellants as to the existence of the danger and of the likelihood that decedent would be attracted to and fall into the pool; that in spite of such knowledge, the respondent took no steps whatsoever, not even so much as a neighborly warning, to prevent, or attempt to prevent the drowning. This case appears to be directly parallel to the one at bar. In the cited case, the plaintiffs relied upon the ladder as the object which attracted the child. In the instant case the plaintiffs rely upon the grass (unplanted) on the slope leading down to the plant and the rocks in the filter beds as being what attracted Philip. The plaintiffs in both cases stressed the child's extreme youth and the lack of knowledge by the parents of the existence of the pool.

In *Wilford* v. *Little* (1956), 144 Cal.App.2d 477 [301 P.2d 282], a 4½-year-old boy was drowned in a swimming pool. Judgment was entered against the plaintiffs (parents) after they declined to amend their complaint. The judgment was affirmed on appeal and the Supreme Court denied a hearing on November 14, 1956. Plaintiffs attempted to rely upon the "trap" theory in order to avoid the unbroken line of cases involving natural and artificial pools of water. The complaint alleged in substance: the pool had a diving board extending over the water; small children played on the adjacent property; the pool and diving board could be seen by the children from the adjacent property and defendants knew this; the deceased child and some other small children were attracted onto the defendants' property by the diving board and pool; the decedent and another small boy began to play upon the diving board, which was similar to a seesaw or teeter-board in that it had an "up-and-down" motion when jumped upon;

the decedent and his companion were too young to appreciate the danger involved in playing on the diving board and in the pool; in the course of play the decedent fell or jumped from the diving board and drowned; neither of the parents (plaintiffs) knew or had reason to know that there was a swimming pool in the neighborhood or that the property of the defendants was not fenced or enclosed in any manner to keep children or others away from the pool; that a fence or other enclosure could have been installed at a relatively small cost. The court held, in accord with the appellate decisions of this state, that the pool was not an attractive nuisance and that the diving board did not bring the case within the "trap" exception, as exemplified in *Sanchez* v. *East Contra Costa Irr. Co.*, 205 Cal. 515 [271 P. 1060]. In that case a 5-year-old boy was drowned in an irrigation canal when he fell into it after trying to wet his handkerchief. He was sucked into a siphon which carried the water under a cross-stream and his body was found some 15 feet down in the siphon. The court held that defendant had created a concealed danger in the nature of a trap to those who lived close by. The pool in the instant case had no such concealed trap and the rocks which respondents herein claim attracted Philip to the plant did not, in combination with the pool, create an attractive nuisance any more than the diving board did in the Wilford case, *supra*.

Another illustration of a refusal to apply the "trap" theory is *Reardon* v. *Spring Valley Water Co.*, *supra*, 68 Cal.App. 13, where a 5-year-old boy drowned after a fall from a rowboat which was allowed to remain unfastened in a negligently guarded reservoir.

We conclude that the attractive nuisance doctrine does not apply to the situation herein and that the respondents are not entitled to recover herein because the status of their son was that of a trespasser, or at best a licensee. The judgment and the order denying appellants' respective motions for judgment notwithstanding the verdict are and each is reversed, with directions to the court below to enter judgment in favor of appellants.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied April 26, 1957, and respondents' petition for a hearing by the Supreme Court was denied May 22, 1957. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.