[L. A. No. 25591.   In Bank.   Dec. 31, 1959.]

JOHN LAURENCE KING et al., Appellants, v. DONALD E. LENNEN et al., Respondents.

Hirson & Horn and George Zucker for Appellants.

Belcher, Kearney & Fargo, Belcher, Henzie & Fargo and Lester E. Olson for Respondents.

GIBSON, C. J.—Plaintiffs brought this action for damages for the wrongful death of their son, Boyd, who drowned in defendants' swimming pool. A general demurrer to the complaint was sustained without leave to amend, and plaintiffs have appealed from the ensuing judgment.

The allegations of the complaint may be summarized as follows: Defendants' property was located on the northwest corner of an intersection, and they maintained an artificial swimming pool on the premises about 30 feet from one of the streets. Along that street defendants had partially constructed a concrete block wall with an opening four feet wide directly opposite the pool, and facing the other street was a wood rail fence with openings through which children could readily enter. Defendants permitted their cow, two dogs, and three horses to roam freely near the pool. The animals and the pool could be seen by children of tender years who regularly used the streets adjacent to defendants' premises, and, as defendants knew or should have known, such children, attracted by what they saw, habitually entered the premises and played with the animals and in and about the pool. The water in the pool was 3½ feet deep at the shallow end and 9 feet at the deep end. It was dirty and opaque, and its depth could not be ascertained by looking into it. A sharp drop divided the shallow from the deep water, there were no steps, ladders, rails, or other fixtures to assist a person in the pool to hold on or to climb out, and the walls and bottom of the pool were lined with a slippery plastic material. Boyd, who was 1½ years old, lived with his parents on the southeast corner of the intersection diagonally across from defendants. During the five months immediately preceding the accident, defendants' teen-age daughter had been employed as a baby sitter by plaintiffs for compensation, and in

order to entertain Boyd on these occasions, as defendants knew or should have known, their daughter would bring him to their home and permit him to play with the animals near the pool, with the result that he became attracted to the animals and the pool. Due to the frequency of the baby-sitting arrangement the relationship was a continuing one, and, by reason of the relationship, Boyd on the date of his death was on the premises at the express invitation of defendants. No adults were present between 6 a. m. and 6 p. m. on weekdays, including the day when at approximately 11 a. m. Boyd's body was found at the bottom of the pool. The pool constituted a dangerous condition and an unreasonable risk of bodily harm to children of tender years, who could not reasonably be expected to realize or appreciate the danger, and Boyd was attracted to the pool without knowledge of the danger. The usefulness of maintaining the pool was slight as compared with the risk involved, and reasonable safeguards could have been provided at small cost.

The rule set forth in section 339 of the Restatement of Torts has been adopted as the law of this state with respect to the liability of a possessor of land for the death of or injury to a child trespasser. (*Garcia* v. *Soogian*, 52 Cal. 2d 107, 110 [338 P.2d 433] ; *Courtell* v. *McEachen*, 51 Cal.2d 448, 457 [334 P.2d 870] ; *Reynolds* v. *Willson*, 51 Cal.2d 94, 103 [331 P.2d 48].) The section reads: ''A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.''

As we explained in *Garcia* v. *Soogian*, 52 Cal.2d 107, 110 [338 P.2d 433], the question of liability must be decided in the light of all the circumstances and not by arbitrarily placing cases in rigid categories on the basis of the type of condition involved. We also pointed out in that case

(52 Cal.2d at pp. 110-112) that the circumstances that a condition giving rise to injury is common in character does not necessarily exclude liability, that the ability to appreciate danger varies with the age and mental capacity of the child, and that what is important is not whether conditions are common in character but whether their dangers are fully understood by children. In *Courtell* v. *McEachen,* 51 Cal.2d 448, 458 [334 P.2d 870], we held that a young trespassing child who was injured by a common condition, namely, fire or embers, might recover under the law applicable to trespassing children and that it was for the trier of fact to determine whether the child was injured by a risk not obvious to her. ▇ While a child is more likely to be aware of a dangerous condition which is common than of one which is unusual (see *Garcia* v. *Soogian,* 52 Cal.2d at p. 111), it seems obvious that the common nature of a danger, such as that of drowning in a pool, should not bar relief if the child is too young to realize the danger. ▇ Even very young children cannot always be kept under the supervision of their parents, and the question whether a parent in a wrongful death case was guilty of contributory negligence in permitting his young child to play unattended near the defendant's property will ordinarily be for the trier of fact.

▇ A number of cases decided before *Garcia* v. *Soogian, supra,* 52 Cal.2d 107, and *Courtell* v. *McEachen, supra,* 51 Cal.2d 448, reasoned that the "attractive nuisance" doctrine does not apply unless the dangerous condition is uncommon and different from natural conditions which exist everywhere and that a body of water, natural or artificial, is a common danger and therefore, as a matter of law, will not subject the possessor to liability for the drowning of a trespassing child, even if that child is too young to appreciate the danger. (See, e.g., *Knight* v. *Kaiser Co.,* 48 Cal.2d 778, 782 [312 P.2d 1089]; *Melendez* v. *City of Los Angeles,* 8 Cal.2d 741, 745 [68 P.2d 971]; *Doyle* v. *Pacific Elec. Ry. Co.,* 6 Cal.2d 550, 552 [59 P.2d 93]; *Peters* v. *Bowman,* 115 Cal. 345, 350-351, 355-356 [47 P. 113, 598, 56 Am.St.Rep. 106]; *Van Winkle* v. *City of King,* 149 Cal.App.2d 500, 506 [308 P.2d 512]; *Wilford* v. *Little,* 144 Cal.App.2d 477, 480-482 [301 P.2d 282]; *Lopez* v. *Capitol Co.,* 141 Cal.App.2d 60, 65-67 [296 P.2d 63]; *Lake* v. *Ferrer,* 139 Cal.App.2d 114, 117-118 [293 P.2d 104]; *Ward* v. *Oakley Co.,* 125 Cal.App.2d 840, 845 [271 P.2d 536]; *King* v. *Simons Brick Co.,* 52 Cal.App.2d 586, 590 [126 P.2d 627]; *Beeson* v. *City of Los Angeles,* 115 Cal.App. 122, 126-128 [300 P. 993]; *Reardon* v. *Spring Valley Water Co.,* 68

Cal.App. 13, 15-17 [228 P. 406].)  This reasoning is inconsistent with the Restatement rule, and the cases cited above are disapproved insofar as their language or holdings are contrary to the views expressed herein.

The complaint alleges facts sufficient to meet the requirements enumerated in section 339 of the Restatement and thus states a cause of action.  It is specifically alleged that defendants knew or should have known that children of tender years habitually entered the premises and played in and about the pool and that defendants knew or should have known that Boyd had frequently been brought to the vicinity of the pool by their daughter with the result that he had become attracted to it.  The allegations describing the condition of defendants' pool and the surrounding premises, including the absence of an adequate fence or other safeguards, state facts sufficient to permit a trier of fact to find that defendants should have realized that a serious danger of drowning was presented with respect to any unsupervised child of Boyd's age who might come to the pool.  Obviously it could be found that a child of 1½ years would not understand the risk involved in being near a swimming pool, and it is alleged that Boyd did not know the danger.  The last of the requirements set forth in section 339 was also sufficiently covered by the allegations that the utility to defendants of maintaining the condition was slight as compared with the risk to young children and that reasonable safeguards could have been provided at little cost.

The judgment is reversed.

Traynor, J., Peters, J., and White, J., concurred.

SPENCE, J.—I dissent.

This is another of a series of recent decisions of this court dealing with the question of the nature of the duty owed by a landowner to a trespassing child with respect to the condition of the landowner's premises.  My views on this subject have been stated at length in my dissenting opinion in *Reynolds* v. *Willson*, 51 Cal.2d 94, 106 [331 P.2d 48], and in my concurring and dissenting opinions in *Courtell* v. *McEachen*, 51 Cal.2d 448, 460 [334 P.2d 870], and *Garcia* v. *Soogian*, 52 Cal.2d 107, 113 [333 P.2d 433].  It would serve no useful purpose to reiterate those views here.  Suffice it to say that those views were based upon the salutary and reasonable rules established by a long line of "former cases," which were followed by this court as recently as 1957 in

*Knight* v. *Kaiser,* 48 Cal.2d 778 [312 P.2d 1089]. Those settled rules were thrown into a state of confusion by the above-cited more recent decisions of this court, which either ignored or attempted to distinguish the ''former cases.'' The majority opinion here, however, recognizes the inconsistency, for after citing some of the ''former cases,'' including *Knight* v. *Kaiser, supra,* 48 Cal.2d 778, it states that ''the cases cited above are disapproved insofar as their language or holdings are contrary to the views expressed herein.'' All the holdings of the cited ''former cases'' clearly support the judgment of the trial court and are contrary to the views expressed by the majority. I cannot agree that the ''former cases'' should be disapproved or that the judgment here should be reversed.

As stated in my dissenting opinions in the above-mentioned recent cases, the rules established by the ''former cases'' permitted the imposition of liability on the landowner in favor of the trespassing child in certain situations but not in a situation, such as the present one, in which the risk encountered by the trespassing child was one which was both ''common *and* obvious.'' These rules had the virtue of bringing some degree of certainty into the law and preventing the imposition of an unjust burden upon the landowner. I believe that this court should reaffirm those rules rather than disapprove them.

It now appears that with the majority's disapproval here of *Knight* v. *Kaiser, supra,* 48 Cal.2d 778, liability may be imposed upon a landowner for the common and obvious risk to a trespassing child occasioned by the maintenance of a sandpile on the landowner's property. On the other hand, it now appears that with the majority's approval here of the decision in *Garcia* v. *Soogian, supra,* 52 Cal.2d 107, liability may not be imposed for the risk to a trespassing child occasioned by the maintenance of a pile of materials consisting of building panels containing windows. In my opinion, these declarations of approval and disapproval by the majority cannot be reconciled, and thus confusion still exists in this important field of the law.

I would adhere to the settled rules established by the ''former cases'' and would affirm the judgment.

Schauer, J., and McComb, J., concurred.