[Civ. No. 31046. Second Dist., Div. Two. June 29, 1967.]

CHARLES G. HIBBS et al., Plaintiffs and Appellants, v. LOS ANGELES COUNTY FLOOD CONTROL DIS-TRICT, Defendant and Respondent.

168

Valensi & Rose, Donald Feinberg and Henry Waxman for Plaintiffs and Appellants.

Harold W. Kennedy, County Counsel, and Lloyd S. Davis, Assistant County Counsel, for Defendant and Respondent.

FLEMING, J.—Wrongful death action.

Charles and Hazel Hibbs appeal from a judgment dismissing the Los Angeles County Flood Control District as a defendant on the ground that no cause of action had been stated against it.

This action is for the wrongful death of the plaintiffs' son, seven years of age, who drowned on February 8, 1962, in the improved channel of the Los Angeles River at Canoga Park. In their complaint plaintiffs charged that the Flood Control District maintained the channel in a dangerous condition and had been negligent in failing to construct fences around the channel and post warning signs of danger at the location where the drowning took place. The unfenced channel amounted to a dangerous condition, plaintiffs claimed, because children from an elementary school located half a block away had been accustomed to play in and around the area of the channel, a fact which was well-known to the Flood Control District. According to the pleadings the channel was lined with concrete, and in cross-section had the shape of a trapizoid 125 feet wide at the top, 45 feet wide at the bottom, 17 feet deep, and with sides sloping at angles of 23½ degrees. Following a heavy and lengthy rainstorm the channel was filled or partially filled at the time of the accident with a substantial quantity of swiftly flowing water.

The issue before the court is whether the omission of the Flood Control District to fence an improved waterway which passes through a residential area containing an elementary school can amount to the maintenance of a dangerous condition. The issue is perhaps complicated by the fact that the waterway is intermittent, normally dry, and only presents the hazard of drowning in times of heavy rainfall.

## I

█ For purposes of determining liability we rule that Government Code, section 835, adopted in 1963, retroactively applies to this case, which was filed in October 1962 for the death which occurred in February 1962. (Stats. 1963, ch. 1681, § 45(a), cited in *County of Los Angeles* v. *Superior Court,* 62 Cal.2d 839, 843-845 [44 Cal.Rptr. 796, 402 P.2d 868].) On this point we find nothing to add to what has already been said by Mr. Justice Pierce in *Flournoy* v. *State,* 230 Cal.App.2d 520 [41 Cal.Rptr. 190].

## II

█ Can the existence of an unfenced flood control channel amount to the maintenance of a dangerous condition for which the Los Angeles County Flood Control District may be held liable under the Governmental Liability Statute of 1963? We think it can, and that the issue of the Flood Control District's liability should have gone to trial.

For us the problem is largely solved by the text of the statute, the elevant parts of which declare,

"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that. . . .

"The public entity had actual or constructive notice of the dangerous condition. . . ." (Gov. Code, § 835.)

"(a) 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (Gov. Code, § 830.)

"(b) . . . neither an irrigation district nor an employee thereof nor the State nor a state employee is liable under this chapter for an injury caused by the condition of canals, conduits or drains used for the distribution of water if at the time of the injury the person injured was using the property for any purpose other than that which the district or State intended it to be used. . . .

"(d) Nothing in this section exonerates a public entity or a public employee from liability for injury proximately

caused by a dangerous condition of property if:

"(1) The person injured was less than 12 years of age;

"(2) The dangerous condition created a subtantial and unreasonable risk of death or serious bodily harm to children under 12 years of age using the property or adjacent property with due care in a manner in which it was reasonably foreseeable it would be used;

"(3) The person injured, because of his immaturity, did not discover the condition or did not appreciate its dangerous character; and

"(4) The public entity or the public employee had actual knowledge of the condition and knew or should have known of its dangerous character a sufficient time prior to the injury to have taken measures to protect against the condition." (Added Stats. 1963, ch. 1681, p. 3274, § 1.) (Gov. Code, § 831.8.)

█ It seems clear that under the Governmental Liability Act of 1963 a public entity is required to take suitable precautions to protect small children from the risk of injury in an improved waterway where the risk is substantial and where it is practicable to guard against the risk. The Law Revision Commission specifically commented with respect to section 830: "Where it is reasonably foreseeable that persons to whom a lower standard of care is applicable—such as children—may be exposed to a substantial risk of injury from the property, the public entity should be required to take reasonable precautions to protect such persons from that risk. Thus, a public entity may be expected to fence a swimming pool or to fence or lock up a dangerous instrumentality if it is reasonably foreseeable that small children may be injured if such precautions are not taken." (Law Rev. Com., Comment, West's Gov. Code, Anno. § 830, p. 170.) And with respect to section 831.8 the Assembly Legislative Committee commented: "Under subdivision (d), if the person injured was under 12 years of age, the section's immunities are inapplicable if the use of the property by children was reasonably foreseeable, the condition was highly dangerous and not likely to be discovered or appreciated by children, and the condition was actually known to the entity sufficiently prior to the accident for the entity to have taken appropriate precautions." (Law Rev. Com. Comment, West's Gov. Code, Anno. § 831.8, pp. 183-184.) It is apparent that in enacting Government Code, section 831.8 subdivision (d) the legislature wholly adopted

the standard of liability of a possessor of land to children which has been outlined in Restatement, Second of Torts, § 339, and which had been specifically adopted by the Supreme Court in *King* v. *Lennen,* 53 Cal.2d 340, 343 [1 Cal. Rptr. 665, 348 P.2d 98], to compel the fencing of swimming pools.

█ The extent of the liability for the maintenance of a dangerous condition under the 1963 act is similar to that created by the Public Liability Act of 1923 for cities, counties, and school districts (West.'s Gov. Code, Anno., § 835, Legislative Committee Comment, p. 185), and hence cases decided under the earlier act are in point. Such a case is *Torkelson* v. *City of Redlands,* 198 Cal.App.2d 354 [17 Cal.Rptr. 899], the facts of which appear very similar to the facts pleaded in the case at bench. The 10-year-old Torkelson daughter had been drowned in a storm drain which was normally dry, but which had filled with water during a flash flood resulting from a cloudburst:

''The plaintiffs contend that the construction and maintenance of the storm drain without fences, which would prevent access thereto by a child, and without gratings at the intake entrance to the Olive Street underpass and the intake openings of the subsequent underground tunnels, which would prevent a person from being drawn down into the water, resulted in a condition which was dangerous, particularly to children who were accustomed to playing therein; that the city had knowledge of this danger and the presence of children in the drain; that, after acquiring such knowledge, no action was taken to remedy the condition or protect the general public against it. . . .

''The defendant contends that the drain was not dangerous for the purpose for which it had been constructed; that its use as a playground by children cannot be made a basis for liability; and that the trial court properly granted its motion.

█ ''When the property of a public agency is in that condition which involves an unreasonable risk of injury to the general public, it is in a dangerous condition within the meaning of the Public Liability Act. . . .

''. . . An ordinary, usual and customary use, for the purpose at hand, includes that which reasonably should be anticipated, even though without the bounds of the designed or originally intended use (*Acosta* v. *County of Los Angeles,* 56 Cal.2d 208 [14 Cal.Rptr. 433, 363 P.2d 473, 88 A.L.R.2d

1417]; [and other citations]), and any established actual use which, being known to and acquiesced in by the public agency owner, has converted or enlarged the designed or originally intended use. . . .

"The evidence in the case at bar is sufficient to support a finding that, for many years, children frequently played in the ditches which were a part of the storm drain in question; that the drain traversed a residential area and abutted the back yards of many homes; that its ditches were not fenced and the openings to its underground tunnels were not guarded by any type of grating; that such lack of fences or grating . . . constituted a dangerous condition; and that the legislative body of the city, and persons authorized to remedy this condition, had knowledge thereof, but failed to take any action to protect the public from injury which might result therefrom." (198 Cal.App.2d at 357-358, 359-360, 361.)

Each of the considerations, arguments, and authorities cited by Mr. Justice Coughlin in *Torkelson* applies with equal force to the case at bench. In our opinion the claim of liability for a dangerous condition should have been tried and resolved on its merits.

There are, of course, affirmative defenses pleaded which may require trial as well: such as assumption of risk; contributory negligence of the child; contributory negligence of its parents; the special defense under Government Code, section 835.4 of the reasonableness, practicability, and cost of the alternative measures plaintiffs claim should have been taken to protect against a dangerous condition; and the special defense of immunity from liability where a public improvement has been designed and approved by recognized authority. These defenses may present further issues of fact to be resolved by the trial court.

Some further contentions of plaintiffs may be summarily disposed of in view of our recognition of the basic liability of the Flood Control District for dangerous conditions of its property under Government Code, section 835:

1. We fail to see any relevancy to the complaint of the provision of Government Code, section 815.2, which makes a public entity liable for the tortious acts and omissions of its employees acting within the scope of their employment. In the present case no single employee would be authorized to fence the flood control channel or spend money for that purpose. The liability, if any, for this omission must attach to the public entity itself. Even were we to assume that the chief

executive officer of the Flood Control District had been given special authority to fence or not to fence a particular section of a flood control channel, his exercise of that authority would amount to a discretionary act and hence would not involve personal liability for any particular act or omission. (*Selby* v. *County of Sacramento,* 139 Cal.App.2d 94, 100 [294 P.2d 508]; *Bauer* v. *County of Ventura,* 45 Cal.2d 276, 289 [289 P.2d 1]; Gov. Code, §§ 815.2, 840.2.)

2. Nor do we find any validity in the claim that the Los Angeles Flood Control District was required to fence the entire flood channel because of an ordinance adopted by the Los Angeles County Board of Supervisors which required the fencing of certain man-made excavations. Aside from the fact that the ordinance had not been pleaded or brought before the court, we do not think that an ordinance controlling man-made excavations has any direct relevancy or applicability to improvement of a natural waterway for flood control purposes. Furthermore, the Los Angeles County Flood Control District is a state agency, and in the execution of its duties it is not ordinarily subject to local control by coordinate state agencies. (*County of Los Angeles* v. *Continental Corp.,* 113 Cal.App.2d 207, 220 [248 P.2d 157]; *County of Los Angeles* v. *City of Los Angeles,* 212 Cal.App.2d 160 [28 Cal.Rptr. 32]; *Hall* v. *City of Taft,* 47 Cal.2d 177 [302 P.2d 574].) Yet to state that the county ordinance relating to man-made excavations does not create a statutory liability for negligence on the Flood Control District is not to state that the ordinance is wholly irrelevant to the issues in the case. It is possible that the ordinance may become admissible as evidence of the prevailing standard of care in protecting children against the hazards of drowning. (Witkin, Cal. Evidence, (2d ed. 1966)), p. 380; cf. *Torkelson* v. *City of Redlands,* 198 Cal.App.2d 354, 363 [17 Cal.Rptr. 899].) This is an evidentiary question to be resolved by the court at the time of trial.

Judgment reversed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied July 19, 1967, and respondent's petition for a hearing by the Supreme Court was denied September 27, 1967.