[Civ. No. 901. Fifth Dist. Nov. 12, 1968.]

NARCISCO GARCIA CARDENAS et al., Plaintiffs and Appellants, v. TURLOCK IRRIGATION DISTRICT, Defendant and Respondent.

354

Cardozo, Trimbur & Nickerson and Gary S. Davis for Plaintiffs and Appellants.

McCormick, Barstow, Sheppard, Coyle & Best and William B. Boone for Defendant and Respondent.

GARGANO, J.—Appellants initiated this wrongful death action to recover damages for the loss of their two minor sons.

The cause was tried by the court, who found for the respondent. Appellants appeal from the adverse judgment.

Respondent, an irrigation district, organized and existing under the Irrigation District Law (division XI of the Water Code), owns and operates a network of canals for the transportation of water to its consumers. On June 25, 1963, appellants' sons drowned in a branch which traverses a residential area in Modesto. This branch represents nine miles of the 250 miles of the district's canals and, like respondent's other canals, is not fenced. Moreover, it traverses a residential area of Modesto, and children of all ages swim regularly in the canal even though "no swimming" and "no trespassing" signs were posted by the district.[1]

For two months prior to the time of the tragedy the Cardenas family had lived a block and a half from the canal. Aged 6 and 8, neither of the Cardenas boys knew how to swim, so their parents had warned them many times not to go near the canal lest they drown. Around 6 p.m. of the day of the drownings the two boys said that they were going out to play in their front yard. Their father told them not to go anywhere else. However, the boys were left unattended by the parents, and their absence was not discovered until about an hour and a half later when their father noticed that they were no longer in the yard. As he was about to search for them, Deputy Sheriff Jimmy Trevena arrived and told him that the boys had been found in the canal. Although the record is confused as to exactly when Deputy Sheriff Trevena notified the Cardenases of the tragedy, and when he first arrived at the scene, he nevertheless testified that he arrived at the canal at 7:56 p.m. He said that at that time he saw both boys being given mouth-to-mouth resuscitation. Later the boys were taken to the county hospital where a physician pronounced them dead at 8:30 p.m.

It is clear, under Government Code section 831.8, that an irrigation district is not ordinarily liable for an injury caused by the dangerous condition of one of its canals if at the time of the injury the person injured was using the canal for any purpose other than that for which the district intended it to be used.[2] However, this statutory immunity

---

[1]The district was aware that children were swimming in the canal. A district officer testified that "the canals have been posted at different places at different times, but the signs don't stay there very long."

[2]Section 831.8, subdivision (b) limits the liability of an irrigation district as follows: ". . . neither an irrigation district nor an employee

does not apply to small children. ██ On the contrary, as appellants correctly assert, the liability of an irrigation district under the Governmental Liability Act of 1963 for injuries to small children is essentially similar to the liability of private landowners under the attractive nuisance doctrine. Thus, such a district is required to take suitable precautions to protect small children from the risk of injury in an improved waterway where the risk is substantial and where it is practicable to guard against the risk. Government Code section 831.8, subdivision (d) provides: ''(d) Nothing in this section exonerates a public entity . . . from liability for injury proximately caused by a dangerous condition of property if: (1) The person injured was less than 12 years of age; (2) The dangerous condition created a substantial and unreasonable risk of death or serious bodily harm to children under 12 years of age using the property or adjacent property with due care in a manner in which it was reasonably foreseeable that it would be used; (3) The person injured, because of his immaturity, did not discover the condition or did not appreciate its dangerous character; and (4) The public entity or the public employee had actual knowledge of the condition and knew or should have known of its dangerous character a sufficient time prior to the injury to have taken measures to protect against the condition.''

██ And, as the appellate court succinctly stated in *Hibbs* v. *Los Angeles County Flood Control Dist.*, 252 Cal.App.2d 166, 170-171 [60 Cal.Rptr. 364]: ''It is apparent that in enacting Government Code, section 831.8 subdivision (d) the legislature wholly adopted the standard of liability of a possessor of land to children which has been outlined in Restatement, Second of Torts, § 339, and which had been specifically adopted by the Supreme Court in *King* v. *Lennen,* 53 Cal.2d 340, 343 [1 Cal.Rptr. 665, 348 P.2d 98], to compel the fencing of swimming pools.

The extent of the liability for the maintenance of a dangerous condition under the 1963 act is similar to that created by the Public Liability Act of 1923 for cities, counties and school districts (West's Gov. Code, Anno., § 835, Legislative Commit-

thereof nor the State nor a state employee is liable under this chapter for an injury caused by the condition of canals, conduits or drains used for the distribution of water if at the time of the injury the person injured was using the property for any purpose other than that for which the district or State intended it to be used.''

tee Comment, p. 185), and hence cases decided under the earlier act are in point.''

With these principles in mind, appellants contend that the undisputed evidence established respondent's liability for the death of their children as a matter of law. The essence of their argument is that the trial court had no choice but to find that the presence of respondent's unfenced canal in a residential area created a substantial and unreasonable risk of injury to their small children, that the boys did not appreciate the danger, that respondent could reasonably have taken precautionary measures to protect small children, that respondent's failure to take such measures and the dangerous condition of the canal were the proximate cause of the children's deaths and that appellants were not guilty of contributory negligence. In other words, the trial judge found against appellants on all of these issues, any one of which is sufficient to support his judgment, and appellants contend that he was wrong, as a matter of law, in each instance.

Appellants plausibly argue that the tragic loss of their children might have been avoided if the district had fenced its canal or taken other precautionary measures to protect small children. However, their arguments are not persuasive at the appellate level. The evidence raised factual issues which were resolved by the trial court in respondent's favor, and these issues cannot be retried on appeal. ■ It is elementary that an appellate court must view the evidence in the light most favorable to respondent, and that it will not disturb a finding of the trier of fact if there is substantial evidence in the record to support the finding. In short, ''the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted, which will uphold the disputed finding.'' (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557].)

■ First and foremost, the trial court found that respondent's branch canal did not create a substantial and unreasonable risk of death or serious bodily harm to appellants' children (children between the ages of 6 and 8 years), and this finding is supported by sufficient evidence. The sides of the canal were not slippery, the grade was only 3/10 of a foot per thousand feet, the average rate of flow was but one foot per second, and the average depth was 4.8 feet. Moreover, relatively few drownings had occurred over an 11-year period, albeit the canal was nine miles long, traversed a relatively populated area and large numbers of children of all ages

swam in it regularly.[3] And, significantly, the trial judge determined that the canal did not create a substantial and unreasonable risk of death or serious bodily harm to appellants' children after he viewed the scene. It is settled that a view of the scene by a trial judge is independent evidence upon which a finding may be made and sustained (*Otey* v. *Carmel Sanitary Dist.*, 219 Cal. 310, 312 [26 P.2d 308]; Evid. Code, § 140).

Appellants apparently suggest that the existence of an unfenced canal or other body of water in a residential area is per se, and as a matter of law, a condition which creates a substantial and unreasonable risk of death or serious injury to young children. However, the cases relied upon by appellants do not stand for this categorical proposition. For example, in *Hibbs* v. *Los Angeles County Flood Control Dist.*, *supra*, 252 Cal.App.2d 166, the court did not hold that defendant's unfenced channel created a hazardous condition to children as a matter of law. The court decided only that plaintiff's claim against the district for the death of his son who drowned in the channel should have been "tried and resolved on the merits." Likewise, in *King* v. *Lennen*, 53 Cal.2d 340 [1 Cal.Rptr. 665, 348 P.2d 98], the Supreme Court merely held that plaintiff's complaint raised issues of fact to be resolved by the trier of fact. There the plaintiff sought to recover damages for the death of his son who drowned in a neighbor's swimming pool. Significantly, the complaint inter alia alleged that the boy was only $1\frac{1}{2}$ years of age, that the water in the pool was dirty and opaque, that its depth could not be ascertained by looking into it, that a sharp drop divided the shallow from the deep water, and that the walls and bottom of the pool were lined with slippery plastic material.

 Second, even if we should assume arguendo that respondent's canal created a substantial and unreasonable risk of death or serious bodily injury to young children as a matter of law, appellants did not clear the remaining hurdle of section 831.8; their evidence did not also establish, as a matter of law, that appellants' children "did not appreciate its dangerous character." (See Gov. Code, § 831.8, subd. (d)(3).) On the contrary, there was substantial evidence to sustain the trial court's opposite finding. Because they could not swim, the boys had been repeatedly warned by their par-

---

[3]Between 1954 and 1965 (two years after the accident), 11 children under the age of 10 drowned in the canal.

ents to stay away from the canal lest they drown. And, significantly, the boys were of normal intelligence, and their father testified that they understood the danger that the canal presented. Moreover, the children were drowned during daylight hours when the presence of the water in the canal was obvious, and its dangerous character reasonably apparent, even to children between the ages of 6 and 8 years.[4]

Third, there was substantial evidence for the court to find, as it did, that appellants were guilty of contributory negligence and that this negligence was a proximate cause of their children's deaths. Mr. and Mrs. Cardenas were aware of the presence of the nearby ditch which they now contend was a substantial and unreasonable hazard to the safety of their children who could not swim. They also knew that the older boy habitually went there even though he had been spanked for disobedience.[5] Yet, they allowed the children to play outside unattended for about an hour and a half when they were both at home and could have readily provided the necessary supervision. It is the rule that the failure of a parent to supervise a child, with knowledge of existing danger, may constitute negligence which could preclude recovery on the part of the parent for the death of the child (*Kasunich* v. *Kraft,* 201 Cal.App.2d 177, 185 [19 Cal.Rptr. 872]). As was stated in *Agdeppa* v. *Glougie,* 71 Cal.App.2d 463, 466 [162 P.2d 944]: "The conduct of small children is unpredictable and their propensity to wander from their premises and into the streets is a matter of common knowledge. (*Springer* v. *Sodestrom,* 54 Cal.App.2d 704 [129 P.2d 499].) Parents are therefore chargeable with the duty of exercising ordinary care in the protection of their minor children. (*Seperman* v. *Lyon Fire Proof Storage Co.,* 97 Cal.App. 654 [275 P. 980]; *Healy* v. *Market Street Ry. Co.,* 41 Cal.App.2d 733 [107 P.2d 488].) Where the failure of the parents to exercise such care proximately causes or contributes to the injury or death of their child the action of the parents for damages is thus defeated. (*De Nardi* v. *Palanca,* 120 Cal.App. 371 [8 P.2d 220]; *Seperman* v. *Lyon Fire Proof Storage Co., supra.*) Whether or not

---

[4]There is no evidence that the boys were deceived or trapped or that they were otherwise injured by reason of some unknown, uncommon, unusual or abnormal hazard. Thus, according to the evidence, the only dangerous condition causally involved in the drownings was the presence of water in an unfenced canal.

[5]Appellants challenge the testimony of the deputy sheriff who stated that one of the appellants told him the oldest boy was in the habit of going to the canal. However, appellants' argument goes to the weight of the testimony and is not persuasive in this appeal.

the mother was guilty of negligence which proximately caused the death of Louis was a question of fact for the trial court.''

At oral argument appellants' counsel candidly admitted that the evidence was sufficient to sustain the trial court's finding that appellants' failure to supervise their children for an hour and a half amounted to negligence on their part. However, appellants argued that since the exact time of the children's drownings was not established by respondent, there is no evidence to prove that the parents' contributory negilgence was a proximate cause of the children's deaths. In other words, appellants maintain that the evidence allows for the conclusion that the children were drowned only a few minutes after they went out to play, and if this was so the parents' lack of supervision was not the proximate cause of the children's deaths. They therefore assert that respondent did not meet its burden of proof on this vital issue.

Counsel's argument is not convincing. It is reasonably clear from the evidence, when viewed as a whole, that the children must have been removed from the canal between an hour and an hour and a half after they went outside to play. Thus, the court, by logical inference, could reasonably conclude that the children drowned around 7:30 p.m. In fact, the trial judge could have concluded that if the children had fallen into the canal only a few minutes after they went outside to play, as appellants suggest could have happened, they would have been seen in the canal shortly after 6 o'clock and appellants would have been notified of the tragedy much earlier than they were. Moreover, Deputy Sheriff Trevena testified that he arrived at the scene at about 7:56 p.m., and when he arrived the boys were being given mouth-to-mouth resuscitation by an officer of the highway patrol and an unidentified woman. From this the trial judge, by logical inference, could also have reasonably surmised that there was still some sign of life in the boys at 7:56, and hence that the tragedy had occurred shortly before. Finally, the official casualty report prepared by Deputy Sheriff Jerry G. Starr fixed the time of the drownings at 7:30 p.m. This report was obviously based on hearsay and was not offered into evidence. However, Deputy Sheriff Trevena was allowed to testify as to its contents without objection by appellants' trial counsel, and the hearsay objection was waived (*Powers* v. *Board of Public Works,* 216 Cal. 546 [15 P.2d 156]).[6]

---

[6]It is practically undisputed that the parents did not know where the

In any event, appellants' contention is paradoxical and a two-edged sword. Appellants offered no evidence as to when, how or under what circumstances the drownings occurred. In fact, there is no evidence to prove that the drownings were caused by an accident rather than through some criminal or other independent agency. Appellants merely proved that the boys were drowned in respondent's canal and relied on reasonable and logical inferences to prove that they fell in the canal by accident and that their deaths resulted because of the dangerous character of the canal. Thus, if appellants' contention that the respondent did not establish the essential causal relationship between the negligence of the parents and the death of their children has validity, then arguably respondent's contention that appellants failed to show any causal relationship between any dangerous condition of the canal and the death of their children also has validity.

Fourth, after considering such factors as the cost and practicability of fencing or undergrounding respondent's canals, respondent's ability to assume such costs, the public necessity involved in respondent's function of transporting irrigation water, the extent of the danger of injury to others and the effectiveness of fencing to keep children out of respondent's canals, the trial judge found that respondent's failure to fence the canal or take other protective measures to protect small children was reasonable under all of the circumstances. We cannot hold that the trial judge was wrong as a matter of law. In this connection, Government Code section 835.4 provides: ''(a) A public entity is not liable under subdivision (a) of Section 835 for injury caused by a condition of its property if the public entity establishes that the act or omission that created the condition was reasonable. The reasonableness of the act or omission that created the condition shall be determined by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of taking alternative action that would not create the risk of injury or of protecting against the risk of injury. (b) A public entity is not liable under subdivision (b) of Section 835 for injury caused by a dangerous condition of its prop-

children went or what they were doing after they went outside to play. Thus, if appellants' argument is carried to its logical conclusion, it would mean that a grossly negligent parent who permitted his small children to play outside unattended near a dangerous canal for an entire day could escape liability simply because the defendant could not prove the time of death with exact precision.

erty if the public entity establishes that the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable. The reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury.'"[7]

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

---

[7] According to the California Law Revision Commission, the policy considerations underlying the adoption of this section were as follows: "This defense has been provided public entities in recognition that, despite limited manpower and budgets, there is much that they are required to do. Unlike private enterprise, a public entity often cannot weigh the advantage of engaging in an activity against the cost and decide not to engage in it. Government cannot 'go out of the business' of governing. Therefore, a public entity should not be liable for injuries caused by a dangerous condition if it is able to show that under all the circumstances, including the alternative courses of action available to it and the practicability and cost of pursuing such alternatives, its action in creating or failing to remedy the condition was not unreasonable."