[Civ. No. 25408. Second Dist., Div. One. Mar. 12, 1962.]

JOHN E. KASUNICH et al., Plaintiffs and Respondents, v. WILLIAM KRAFT et al., Defendants and Appellants.

Wyman, Finell & Rothman and Gerald M. Bazar for Defendants and Appellants.

Hirson & Horn, Theodore A. Horn, Albert Grossman and Abe Mutchnik for Plaintiffs and Respondents.

FOURT, J.—This is an action for the wrongful death of plaintiffs' 2½-year-old daughter who drowned in defendants' swimming pool. The jury returned a verdict on August 18, 1960, in favor of plaintiffs and against defendants in the sum of $1,000. The judgment was entered on August 19, 1960.

On September 7, 1960, *plaintiffs* filed a notice of intention to move for a new trial on the *issue of damages*. Plaintiffs' points and authorities in support of notice of intention to move for a new trial on the issue of damages were filed September 12, 1960. On September 27, 1960, defendants filed their points and authorities in opposition to motion for new trial. By minute order dated September 29 and entered October 3, 1960, the trial court granted plaintiffs' motion for a new trial as to the issue of damages only, upon the grounds of insufficiency of the evidence to sustain the verdict.

Defendants appeal ". . . from the judgment . . . in the amount of One Thousand Dollars ($1,000.00) entered on August 18 [*sic*], 1960" and ". . . from the order . . . entered

on September 29 [sic], 1960, granting the motion of said Plaintiffs for a new trial on the issue of damages only." Defendants state in their opening brief that they ". . . wish to have the Order granting the limited new trial reversed. They wish to have the judgment reversed only if necessary in order to preclude a limited new trial. If the Order is reversed, defendants wish the judgment to stand."

A résumé of some of the facts is as follows: plaintiffs resided with their five children, including the decedent, on Chelsea Road in the City of Palos Verdes Estates. Defendant James Kraft, a 17-year-old high school student, resided with his parents, defendants William K. and Bernice Kraft, four lots away from plaintiffs' home on the same street.

The area is residential. There were no sidewalks or curbs. All of the front lawns were located in part on the dedicated street and merged into the paved portion of the street. Chelsea Road might be described as a country rather than a city type street. Children and adults regularly used and were on the street.

Chelsea Road terminates at one end of a cul-de-sac known as Epping Circle. The Kraft home fronted on the cul-de-sac area. There was a swimming pool and garage located on the Kraft premises to the rear of their residence. *A fence entirely surrounded the Kraft premises, including the garage and swimming pool. The only opening to the yard was a two-door gate, which contained a self-closing and self-latching device.*

At all times herein pertinent there was in existence an ordinance of the City of Palos Verdes Estates relating to the maintenance of swimming pools.[1] Defendants' fence and gate

---

[1]The ordinance provides in pertinent part as follows:

"SECTION 1. That the maintenance of private swimming pools, without adequate supervision or precautionary and protective measures constitutes a severe hazard to the safety of the inhabitants of the City of Palos Verdes Estates and particularly to small children in the City of Palos Verdes Estates. That numerous small children have been drowned by falling into private swimming pools in the County of Los Angeles; that many of said deaths could have been prevented if adequate preventive measures had been required and installed. That the hazard to children in the City of Palos Verdes Estates is increased as additional pools of such nature are constructed within said City.

"SECTION 2. Every person in possession of land within the City of Palos Verdes Estates, either as owner, purchaser under contract, lessee, tenant, licensee, or otherwise, *upon which is situated a swimming pool, shall at all times maintain on the lot or premises upon which such pool is located and completely surrounding such pool, lot or premises, a fence or other solid structure not less than four (4) feet in height with no opening therein (other than doors or gates) larger than six (6) inches square. All gates or doors opening through such enclosure shall be*

complied with the requirements of the ordinance in that the fence was the proper height and the gate contained a self-closing and self-latching device. However, sometime prior to the accident defendants had attached a hook and eye fastener and a length of rope to the gate sections. By making use of the fastener and rope defendants could maintain the gate in an open position.

The day of the accident was cloudy and overcast. It had become sufficiently dark at the time of the accident to require the use of automobile headlights. There were no street lights on Chelsea Road to provide illumination. Plaintiffs testified that at approximately 5 p. m. they gave their 2½-year-old daughter (hereinafter referred to as Decedent) permission to go outside and play in the street, admonishing her to remain in the company of her 5 and 7-year-old brothers, who were also outside playing with other children. Mr. Kasunich testified that he had instructed the two boys to stay close to Decedent and further testified that the two boys had responsibility for her. At approximately 5:30 p. m. plaintiffs began to search for Decedent.

Meanwhile, at approximately 5:15 p. m., James Kraft arrived at his home for the purpose of washing his own and his grandmother's automobile and painting hub caps. In order to move the automobile from the street area into the garage area he first opened the gates, securing one open with the hook and eye device and the other with the rope. He then moved the car just inside the gate in order to wash it. Later

---

*equipped with a self-closing and self-latching device designed to keep and capable of keeping such door or gate securely closed at all times when not in actual use; such latching device must be so located as not to be easily accessible to small children; provided, however, that the door of any dwelling occupied by human beings and forming any part of the enclosure hereinabove required need not be so equipped.*

``. . . . . . . . . .

''SECTION 6. *That any person, firm, association or corporation violating any of the provisions of this ordinance shall be guilty of a misdemeanor,* and upon conviction of any such violation such person, firm, association or corporation shall be punishable by a fine of not more than $500.00 or by imprisonment in the City Jail of the City of Palos Verdes Estates, California, or in the County Jail of Los Angeles County, California, as the committing magistrate may direct, for a period of not to exceed six (6) months, or by both such fine and imprisonment in the discretion of the Court.

''Every such person, firm, association or corporation shall be deemed guilty of a separate offense for each and every day during which, or during any portion of which, any of the provisions of this ordinance is violated and shall be punishable therefor as herein provided.''
(Emphasis added.)

he removed the car to the garage area in order to paint hub caps. The entire operation took less than an hour, during which time the gates were held open by the aforesaid device and rope. During a portion of the time the gates were within the view of the minor defendant. At approximately 6 p. m. James locked the gates.

Presumably during a portion of the time when James was not in view of the gate Decedent, unattended, wandered through the open gate and into the swimming pool, where she met her death.

Prior to Decedent's death all defendants were aware of the ordinance and were also aware of the fact that small children played in the street area near the gates. Plaintiffs were likewise aware of the existence of the ordinance. Plaintiffs were also aware of the fact that in order for cars to go in and out of defendants' garage and through the driveway it was necessary for the gate to be open.

 Defendants' first contention is that the trial court erred in instructing that defendants were negligent as a matter of law. The basis for the trial court's determination that defendants were negligent as a matter of law was that ". . . the defendants violated that Ordinance and having violated that Ordinance they are guilty of negligence." The jury was so informed[2] and instructed.[3]

---

[2] The reporter's transcript discloses that the trial court made the following statement to the jury after both sides had rested their case but prior to argument:

"The Court: Ladies and gentlemen, at the commencement of this case I told you that there might be three questions that you might be called upon to decide. I think I said it was negligence, proximate cause, contributory negligence, and the damages that might be issues for you to determine.

"Of course, I couldn't know until I heard the evidence. The Court has the responsibility of determining questions of law and the jury, of course, has the function of deciding questions of fact. Once the law has been determined by the Court, it must be accepted by the jury under your oath.

"*The Court in this case has concluded that as a matter of law the plaintiffs, who are the parents of the minor child, Lisa, were not guilty of any contributory negligence and has removed that issue from your consideration.* And any evidence that you heard or which was permitted to be introduced into the case has been stricken from the record and must, to the extent that it is humanly possible be stricken out of your own minds.

"*In addition, the Court is also ruling, as I will subsequently instruct you, there is an applicable Ordinance of the City of Palos Verdes governing the maintenance of a protective area around swimming pools for children, against children falling in, and the Court is ruling that as*

---

[3] See following page.

Defendants take the position that they complied with the literal wording of the ordinance and therefore did not violate it (i.e., the fence was the proper height and the gate was equipped with a self-closing and self-latching device). This position cannot be sustained.

It is fundamental, under the rules of statutory construction, that statutes and ordinances are to be given a reasonable interpretation and that a literal construction which will lead to absurd results and render nugatory the very purpose for the enactment of the ordinance will be avoided. (*Select Base Materials, Inc.* v. *Board of Equalization*, 51 Cal.2d 640, 645 [335 P.2d 672]; *Clements* v. *T. R. Bechtel Co.*, 43 Cal.2d 227, 233 [273 P.2d 5]; *Warner* v. *Kenny*, 27 Cal.2d 627, 629 [165 P.2d 889]; *Dempsey* v. *Market St. Ry. Co.*, 23 Cal.2d 110, 113 [142 P.2d 929]; 45 Cal.Jur.2d, Statutes, § 130, pp. 637-638.)

The clear import of the ordinance is that there must be a fence of the proper height; that the gate must be equipped

---

*a matter of law the defendants violated that Ordinance and having violated that Ordinance they are guilty of negligence.*

''*The remaining issues, therefore, that this jury will determine are (1) Was the negligence on the part of the defendants a proximate cause or did it contribute in a degree to the accident.* If you find that it was not a proximate cause, then the verdict should be for the defendants, but *if you find it to be a proximate cause, contributed in some degree to this accident and her death, then the defendants are liable and you will then be obligated to determine the remaining issue of damages,* and the damages will be fixed by you in the manner that the Court will hereafter instruct you.

''Does everybody understand those instructions?

'' (The jurors nodded affirmatively.)'' (Emphasis added.)

[3]The jury was instructed in pertinent part as follows:

''21.

''In civil actions the party who asserts the affirmative of an issue must prove that issue by a preponderance of the evidence.

''By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability of truth lies therein. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, that is, has the greater convincing force, then your finding upon that issue must be against the party who had the burden of proving it. *In this action, the plaintiff has the burden of proving the following issues:*

'' (1) *That the negligence of the defendants as found by the Court was a proximate cause of the minor child Lisa's death;*

'' (2) The nature and extent of plaintiffs' damages.

''104.

''The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have

with a self-closing and self-latching device; *and that the gate must be securely closed at all times when not in actual use.* The violation of the ordinance occurred when the gate was kept open when not in actual use.

██ The rebuttable presumption of negligence which arises from the violation of a statute or ordinance may be overcome by evidence of justification or excuse. (*Alarid* v. *Vanier*, 50 Cal.2d 617, 621 [327 P.2d 897]; *Gallup* v. *Sparks-Mundo Engineering Co.*, 43 Cal.2d 1, 9 [271 P.2d 34]; *Tossman* v. *Newman*, 37 Cal.2d 522, 525 [233 P.2d 1].) The Supreme Court in *Alarid* v. *Vanier, supra,* 50 Cal.2d 617 at page 624, held that the rule to be applied in determining whether a defendant has overcome the presumption of negligence is ". . . whether the person who has violated a statute has sustained the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law."

---

occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury. (It may operate directly or through intermediate agencies or through conditions created by such agencies.)

"112.

"*The issues to be determined by you in this case are these:*

"Was the negligence of the defendants, as found by the Court, a proximate cause of plaintiffs' minor child's death?

"If you answer that question in the negative, plaintiffs are not entitled to recover, but if you answer in the affirmative, you then will find what damage plaintiffs thus have been caused to suffer, and you will return a verdict in their favor for the amount thereof." (Emphasis added.)

"_____

"On March 27, 1956, the City of Palos Verdes Estates enacted Ordinance No. 153, and Section 2 thereof, which was in force and effect on the day of this accident, reads in part as follows:

" 'SECTION 2: Every person in possession of land within the City of Palos Verdes Estates, either as owner, purchaser under contract, lessee, tenant, licensee or otherwise, upon which is situated a swimming pool, shall at all times maintain on the lot or premises upon which such pool is located and completely surrounding such pool, lot or premises, a fence or other solid structure not less than 4 feet in height, with no opening therein (other than doors or gates) larger than 6 inches square. All gates or doors opening to such enclosures shall be equipped with a self-closing and self-latching device designed to keep and capable of keeping such door or gate securely closed at all times when not in actual use. Such latching device must be so located as not to be easily accessible to small children.'

"*The Court will instruct you that the violation of that Ordinance is negligence as a matter of law, but you must further, of course, consider whether that negligence as a matter of law, as I heretofore instructed you, was a proximate cause of the minor child Lisa's death.*" (Emphasis added.)

The evidence in the case at bar clearly shows that there was no justification or excuse for keeping the gate open for the extended period of time. Defendant James Kraft testified as follows:

"Q. Did you have any particular reason for keeping the gates latched open during this 45 minute period, sir? A. No, sir."

As set forth in footnotes 2 and 3, although the trial court ruled that the defendants were negligent as a matter of law, the question of whether the negligence was the proximate cause of the accident was left to the jury.

Defendants' next contention is that the trial court was in error in failing to instruct the jury on contributory negligence.

The contributory negligence of an heir is a bar to his claim in an action for wrongful death. It is stated in 55 California Jurisprudence 2d, Wrongful Death, section 40, pages 438-440, as follows:

"Contributory negligence of the plaintiff-beneficiary may bar recovery, in a wrongful death action. Thus, where a parent sues to recover damages for a child's wrongful death, recovery may not be had if the negligence of the parent proximately contributed to the child's death, *as, for instance, by negligent failure to live up to the duty of care for the child's safety.* And in a father's action for the death of a minor child, contributory negligence of the mother is sometimes imputed to the father, in at least two cases on the theory that the wife acted for and represented the community. And the principle that it is necessary in certain situations, by reason of the community property nature of a spouse's interest in a cause of action, to impute the negligence of one spouse to the other to prevent the negligent spouse for profiting by his own wrong has been applied in a case involving the parents' action for the death of an adult son." (Emphasis added.)

"Contributory negligence on the part of one or more of the statutory beneficiaries of a wrongful death action brought under the general statute does not bar recovery by or on behalf of other beneficiaries whose conduct is not tainted by contributory negligence. It only bars recovery by or on behalf of the ones who are guilty of contributory negligence."

It was the defendants' contention that the plaintiffs were guilty of contributory negligence in that they failed to exercise supervision over the Decedent. Instructions were submitted on this defense. The trial court ruled as a matter of law that the plaintiffs were not guilty of contributory negli-

gence and removed that issue from the jury's consideration. (See footnote 2.)

Each party is entitled to have his theory or theories of the case submitted to the jury in accordance with the pleadings and proof where there is substantial evidence in the record justifying the giving of the instructions. The existence or nonexistence of substantial evidence is a question of law. In ascertaining whether it was error for the trial court to remove the issue of contributory negligence from the case and thereby refuse to give defendants' instructions thereon, this court views the evidence in the light most favorable to defendants (appellants). (*Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630 [255 P.2d 795]; *Mau* v. *Hollywood Commercial Buildings, Inc.*, 194 Cal.App.2d 459 [15 Cal.Rptr. 181]; *Dyer* v. *Knue*, 186 Cal.App.2d 348 [8 Cal. Rptr. 753]; *Edgett* v. *Fairchild*, 153 Cal.App.2d 734 [314 P.2d 973].)

It was apparently the trial court's position that the ordinance imposed certain obligations upon defendants with respect to the safeguarding of their swimming pool and that plaintiffs could rely upon defendants not to violate the ordinance, i.e., that plaintiffs had no reason to foresee any harm to their child from any likelihood that defendants would violate the ordinance.[4] (See 35 Cal.Jur.2d, Negligence, § 232, pp. 765-769, Reliance on Assumption That Other Person Will Act Properly.)

The violation of a statute is not tantamount to strict liability. What was stated by Justice Peters in *Mula* v.

---

[4] The reporter's transcript discloses that the following took place outside the hearing and presence of the jury:

"THE COURT: . . . Here we have a swimming pool and a barricade is required by law to put about it, so that small children can't get in it. That is the very purpose and objective of the statute. Somebody comes along and removes that barricade and the child while playing out in the area, otherwise reasonably safe but for the act of the defendant, is injured.

"Under those circumstances I can't see how the mere fact that you let the child run around has any bearing on it. The point is that where there is a duty on the part of the defendant in determining contributory negligence and proximate cause, that duty must be considered and kept in mind. Absent a duty, then that is a different story. *If there had been no Ordinance telling the Kraft people to put a fence around their pool, as it was before the adoption of the Ordinance the last few years, and then the mother permitted the child to go out and the child wandered over there, then it would become clearly a question of fact, and all this evidence would be admissible because there the mother, with knowledge of the swimming pool, without any right to assume that there would be a fence there to keep the child out, would have a duty to exercise the*

*Meyer,* 132 Cal.App.2d 279 [282 P.2d 107], is pertinent. It is stated at page 284 as follows:

"Appellant argues that a violation of a safety order constitutes negligence *per se,* and then apparently argues that in such a case liability is absolute. Appellant has misconceived the legal effect of a violation of a safety order or statute. It is undoubtedly true that the safety orders here involved were enacted for the protection of the class of which appellant is a member. This being so, a violation of the safety orders constituted negligence *per se.* (*Clinkscales* v. *Carver,* 22 Cal.2d 72 [136 P.2d 777].) In other words, in such a case the jury must be instructed that if a violation is found the jury must find the defendant guilty of negligence as a matter of law. Here the jury was so instructed. But because the defendant was negligent as a matter of law does not determine that he is absolutely liable. He may have any one of several defenses. He may be able to prove that, although he was negligent, plaintiff too acted negligently so as to contribute concurrently and proximately to the accident. (See *Blodgett* v. *B. H. Dyas* Co., 4 Cal.2d 511 [50 P.2d 801].) The argument that, because respondent was guilty of negligence *per se,* the defense of contributory negligence has been eliminated, simply confuses negligence as a matter of law with the doctrine of absolute liability." (See 35 Cal.Jur.2d, Negligence, § 17, p. 504.)

 Plaintiffs' own testimony was that supervision of the Decedent was entrusted to her 5 and 7-year-old brothers; that plaintiffs knew that defendants' gate would have to be opened for normal use of their driveway. Mrs. Kasunich testified as follows:

"Q. Did you ever see any automobiles going in and out of the Kraft driveway? A. The driveway, yes.

"Q. Did you observe how those automobiles got in and out of the gate? A. No.

"Q. You never knew that there was any hook and eye or

---

*parental supervision to prevent the child from going over and falling into that pool.*

"But where there is—and this is what makes this different from the . . . ordinary automobile case, but puts it in the class of the *Scott* v. *Benz* case [67 Cal.App.2d 428 (154 P.2d 738)]—*where there is an affirmative duty imposed by law upon the defendant to perform a duty and he doesn't perform that duty, it is not the burden of a parent to anticipate, absent any notice or other information that would put him on notice that it was being violated, that somebody was going to violate the law."* (Emphasis added.)

locking device, or some sort of a device to keep the gates open when the cars went in and out? A. No, I did not.

"Q. Marsha and you never discussed this? A. Not any hooking device.

"Q. Well, whether it be a hooking device or not, *you were aware of the fact, were you not, that in order for cars to go in and out of the garage and through the driveway the gates had to be opened?* A. *Yes, indeed.*

"Q. *Now, did this give you some apprehension in permitting Lisa to be on the street alone?* A. *Yes.*

"Q. And did you do anything in connection with your supervision of Lisa as a result of that apprehension? A. Yes, our children were told never to go into the Kraft yard because of the swimming pool, unless in the case of Marsha who was invited.

"Q. *Well, knowing that there was some need of having to get in and out of the garage through the gate, as you have now indicated, were you not apprehensive of leaving Lisa on the street or in the area of the street with Douglas and Tyler* [i.e., 5 and 7-year-old brothers]? A. *I believe I trusted that the Krafts would be very careful about that sort of thing.*" (Emphasis added.)

We believe that there was substantial evidence in the record from which the jury could have determined that plaintiffs failed to exercise sufficient supervision over Decedent. Whether plaintiffs were guilty of contributory negligence in permitting their young child to play unattended near defendants' property was a question of fact. (See *King* v. *Lennen,* 53 Cal.2d 340 [1 Cal.Rptr. 665, 348 P.2d 98].)

In light of this determination we feel it is unnecessary to pass upon appellants' (defendants') remaining contentions. The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied March 29, 1962, and respondents' petition for a hearing by the Supreme Court was denied May 9, 1962.