Filed 4/25/22  Gozlan v. Bailey CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ARIEL GOZLAN, | B307087 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC655145) |
| v. | |
| ODETTE BAILEY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael I. Levanas, Judge.  Reversed with directions.

Ford, Walker, Haggerty & Behar, John K. Paulson, and Ashley S. Loeb for Defendant and Appellant.

Panish Shea & Boyle, Ryan A. Casey, Nicholas W. Yoka; The Ehrlich Law Firm, Jeffrey I. Ehrlich and Reid Ehrlich-Quinn for Plaintiff and Respondent.

* * * * * *

In April 2015, a Prius driven by Odette Bailey (defendant) collided with an Infiniti sedan driven by Ariel Gozlan (plaintiff). Plaintiff sued defendant for negligence. Defendant conceded her negligence, but contested causation and damages. The jury returned a special verdict finding that the collision did not cause plaintiff's injuries. The trial court overturned the jury's verdict on the ground that "clear and uncontradicted" evidence established causation. The trial court's ruling was error. Accordingly, we reverse the new trial order and reinstate the jury's verdict.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

#### A.     *The collision*

On April 23, 2015, plaintiff was driving an Infiniti Q50 down a street in Marina Del Rey, California. He was traveling at 25 to 30 miles per hour. Defendant was driving a Toyota Prius. As defendant exited a parking lot driveway at 4 to 6 miles per hour, the front end of her Prius hit the front passenger side of plaintiff's Infiniti. The impact pushed plaintiff's car forward and to the left, causing it to momentarily veer into oncoming traffic.

Neither car's airbags deployed, and neither driver had any visible marks or bruises.

Plaintiff and defendant immediately pulled over to exchange information. They saw no need to dial 911, to call

2

nonemergency police or an ambulance, or to seek medical attention.

### B. *Plaintiff's postcollision treatment*

According to plaintiff, he started to feel pain later on the day of the collision.

Four days after the collision, plaintiff visited a chiropractor to report pain, chiefly in his lower back and down his left leg.

A month after the collision (in May 2015), plaintiff visited a pain management doctor because he was still experiencing "shooting pain" in both legs. The pain management doctor ultimately gave plaintiff four steroid injections into his spine—in July, August, and November 2015, and January 2016. According to plaintiff, the injections mitigated but did not eliminate the pain.

Just over nine months after the collision (in early February 2016), plaintiff visited a neurosurgeon, Dr. Khawar Siddique (Dr. Siddique). Based on an MRI scan, Dr. Siddique diagnosed plaintiff as having a herniated disc between his L4 and L5 vertebrae, meaning that inner material from the disc between those vertebrae was bulging out of the rear of the vertebrae. On March 29, 2016, Dr. Siddique performed a microdiscectomy surgery on that disc by removing the portions that bulged out on the left and right sides of the vertebrae. According to plaintiff, this did not alleviate all of the pain. So in November 2016, Dr. Siddique performed a spinal fusion surgery that removed the entire disc between the L4 and L5 vertebrae, inserted a spacer in place of the hollowed-out disc, and "fused" the L4 and L5 vertebrae to one another with screws.

In June 2017, plaintiff moved to Florida. He did not follow up with Dr. Siddique until September 2019. During that two-

year period, plaintiff worked for his father's general contracting business; as part of his duties, plaintiff would lift and move bags of cement, ceramic tile, vanities, toilets, and tool chests ranging in weight from 50 to 80 pounds. When plaintiff met with Dr. Siddique again, Dr. Siddique reported that the June 2017 fusion had not "taken," that plaintiff would need a second fusion surgery, and that plaintiff would likely need a third fusion surgery for adjacent vertebrae in the future.

## II.    Procedural Background

In March 2017, plaintiff sued defendant for negligence.[1]

The matter proceeded to a five-day jury trial in March 2020. Defendant stipulated that she was negligent, but disputed causation as well as the extent of the $3.5 million in damages plaintiff sought. As witnesses, plaintiff called the chiropractor and pain management doctor who treated him, Dr. Siddique, a few friends and relatives, and himself; he also read portions of deposition testimony of defendant's experts. As witnesses, defendant called a neurosurgeon named Dr. Luke Macyszyn (Dr. Macyszyn) as an expert, a biomechanical engineer as an expert, the spinal surgeon who performed surgeries on plaintiff in 2011, and herself.

The jury returned a special verdict. In response to the question "Was [defendant's] negligence a substantial factor in causing harm to [plaintiff]?", the jury answered, "No."

Plaintiff moved for a new trial on the grounds that (1) the evidence at trial did not support the jury's finding of "no

---

[1]    Plaintiff also sued Bruce Bailey, the owner of the Prius defendant was driving, but the parties do not explain, and the record on appeal does not disclose, why the case did not proceed to trial against Bruce Bailey.

4

causation" because Dr. Macyszyn "testified in clear and explicit words that [the] collision caused plaintiff's injury" and exacerbated the lower back injuries plaintiff had previously suffered, (2) the trial court erred in allowing defendant's biomechanical engineer to testify, and (3) defendant's counsel improperly vouched for the expert neurosurgeon during closing argument.

After further briefing, the trial court granted plaintiff's motion for a new trial. Citing Code of Civil Procedure section 657, subdivision (6),[2] the court found that "a new trial is required" because "the evidence was clear and uncontradicted that [p]laintiff was injured as a result of the accident." For support, the court cited two passages of Dr. Macyszyn's trial testimony in which he testified that plaintiff had suffered an injury and that the collision had exacerbated plaintiff's lower back injuries.

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in granting a new trial under section 657, subdivision (6). Plaintiff responds that the trial court's ruling on this ground was correct and, alternatively, that a new trial was warranted on two other grounds.

## I. Propriety of A New Trial Under Section 657, Subdivision (6)

A trial court has two separate powers to grant a new trial that relate to the quantum of evidence presented to the jury. First, the court has the power to grant a new trial if the court

---

2    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

5

independently concludes that the jury's verdict is against the weight of the evidence. (*Barrese v. Murray* (2011) 198 Cal.App.4th 494, 503; *Mercer v. Perez* (1968) 68 Cal.2d 104, 112 (*Mercer*); *Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 413.) A verdict is against the weight of the evidence only if the court is "convinced from the entire record . . . that the . . . jury clearly should have reached a different verdict" (§ 657, subd. (6)); it is not enough that the court "merely . . . 'would not have come to the same result'" as the jury. (*Kelly-Zurian*, at p. 414; *Dominguez v. Pantalone* (1989) 212 Cal.App.3d 201, 215-216.) When exercising this power, the court effectively sits as a so-called thirteenth juror who may "reweigh the evidence," "disbelieve witnesses," and "draw reasonable inferences . . . contrary to those of the [jury]." (*Mercer*, at p. 112.) A new trial granted on this ground invokes the statutory authority to grant a new trial due to the "[i]nsufficiency of the evidence" under subdivision (6) of section 657. Second, the court has the power to grant a new trial if the jury's verdict is, "as a matter of law," "unsupported by substantial evidence." (*Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 906-907 (*Sanchez-Corea*).) This power is analogous to the power to grant a directed verdict because it may be exercised only if the evidence, when construed in the light most favorable to the jury's verdict, is incapable of supporting that verdict because it does not constitute substantial evidence. (*Ibid.*; *Fergus v. Songer* (2007) 150 Cal.App.4th 552, 567 (*Fergus*).) A new trial on this ground invokes the statutory authority to grant a new trial due to a verdict that "is against law" under subdivision (6) of section 657.

A trial court's grant of a new trial is generally reviewed for an abuse of discretion (*Oakland Raiders v. National Football*

*League* (2007) 41 Cal.4th 624, 636 (*Oakland Raiders*); *Jiminez v. Sears* (1971) 4 Cal.3d 379, 387), but how that standard is to be applied turns on the specific ground for granting the new trial. Where the trial court grants a new trial because, as a thirteenth juror, the court concludes that the jury's verdict is against the weight of the evidence, we are tasked with asking whether the *trial court's* new trial ruling is supported by substantial evidence. (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412; *People v. Lindsey* (1951) 105 Cal.App.2d 463, 465; see generally *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514-515.)  But when the trial court grants a new trial because the jury's verdict is unsupported by substantial evidence (and hence "against law"), we are tasked with asking whether *jury's* verdict is supported by substantial evidence (and hence with reviewing de novo the trial court's determination of that question).  (*Fergus*, *supra*, 150 Cal.App.4th at p. 567; *Design Built Systems v. Sorokine* (2019) 32 Cal.App.5th 676, 686.) Applying this standard, if we conclude that there is "any substantial conflict in the evidence," the jury's verdict was not "against law" and the trial court's grant of a new trial was error. (*Los Angeles Unified School. Dist. v. Torres Constr. Corp.* (2020) 57 Cal.App.5th 480, 509 (*Torres*), italics omitted; *Opp v. Sykes* (1961) 194 Cal.App.2d 208, 211 [where "evidence is in conflict," new trial should not be granted].)

Although the trial court's new trial ruling in this case cited subdivision (6) of section 657 without explicitly specifying which *ground* it was invoking (that is, whether it was invoking that section's "[i]nsufficiency of the evidence" ground or its "against law" ground), the court's *reasoning* unambiguously establishes that it found the jury's verdict to be "against law."  That is

because the court based its ruling on what it viewed as the "clear and uncontradicted" evidence of causation, language that mirrors the language used for more than a century to evaluate whether a directed verdict should be granted. (E.g., *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 527 [examining whether evidence is "uncontroverted" in assessing whether to grant a directed verdict]; *Lompoc Produce & Real Estate Co. v. Browne* (1919) 41 Cal.App. 607, 613; cf. *McCown v. Spencer* (1970) 8 Cal.App.3d 216, 226-227 [trial court, in granting a new trial, expressly relied on both the "insufficient evidence" and "against law" grounds].) It is also because the court did not expressly or implicitly reweigh the evidence. Because we may infer the trial court's ground for granting a new trial from the reasoning set forth in its order, we reject defendant's argument that the ruling was procedurally defective for not specifying its basis. (See *Kralyevich v. Magrini* (1959) 172 Cal.App.2d 784, 788-790 [inferring grounds from reasons for new trial provided in order]; see generally *Oakland Raiders*, *supra*, 41 Cal.4th at p. 634 [discussing the statutory requirement that trial court specify the grounds and reasons for granting a new trial]; *Previte v. Lincolnwood, Inc.* (1975) 48 Cal.App.3d 976, 988 [reviewing court is "confined" "to the specific *reason or reasons* given by the trial court for [its new trial] order"], italics added.)

## II.    The Jury's Verdict Is Supported By Substantial Evidence

Because the trial court ruled that the jury's special verdict of no causation was "against law," our task on appeal is to ascertain whether there is substantial evidence—when viewing the record in the light most favorable to *the jury's* verdict—to support that finding of no causation. (*Fergus*, *supra*, 150

8

Cal.App.4th at p. 567.) To establish that defendant is responsible in tort for his injuries, plaintiff must prove that there is a "reasonable probability" that defendant's conduct—here, the collision—was a "'substantial factor' in bringing about [his] injur[ies]." (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 133; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 778; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572, 574.) Because, as we detail below, there is a "'substantial conflict in the evidence'" on the issue of causation (*Torres*, *supra*, 57 Cal.App.5th at p. 509), there was substantial evidence to support the jury's verdict and therefore the trial court's grant of a new trial was error.

### A. *Evidence supporting a finding of causation*

Plaintiff offered what boils down to a five-step factual argument in support of his position that defendant's negligence caused the injuries for which he sought compensation.

First, plaintiff adduced evidence that, in 2010 or 2011, he had injured his L4-L5 vertebrae on a carnival ride. That injury caused him pain only on the *right* side of his body; a 2011 MRI showed a herniated disc between the L4 and L5 vertebrae bulging on the *right* side of his spine; and to address the pain, plaintiff had two microdiscectomy surgeries (in the fall of 2011) to remove the herniation. Plaintiff experienced no pain on the *left* side of his body. As a result, plaintiff's prior injury involved only a *right*-side herniation of his L4-L5 disc.

Second, plaintiff adduced evidence that, after the surgeries in 2011, plaintiff experienced no further pain from the injury and had "pretty much fully recovered."

Third, immediately after the collision with defendant in 2015, plaintiff started experiencing pain, numbness, and

9

tenderness on the *left* side of his body. MRI scans from June 2015 and March 2016 confirmed a recently herniated L4-L5 disc bulging to the left.

Fourth, Dr. Siddique as well as plaintiff's pain management doctor opined that a herniated disc that bulges to the *left* is a "completely" "new" and "different" "injury" than one that bulges to the *right*, even as to the same disc.

Fifth and finally, because the two injuries are distinct and because plaintiff went from no pain to pain on the *left* side immediately after the collision, plaintiff's chiropractor, plaintiff's pain management doctor, and Dr. Siddique each opined that the herniation of plaintiff's L4-L5 disc to the left was caused by the collision.

### B. *Evidence supporting a finding of no causation*

Defendant offered what amounts to four lines of attack to counter, individually and collectively, plaintiff's evidence of causation.

First, defendant adduced evidence to contradict plaintiff's chief argument that the collision caused a *left*-side herniation to the L4-L5 disc that was wholly distinct from the *right*-side herniation to that same disc plaintiff previously suffered from which plaintiff claimed he had fully recovered. Specifically, Dr. Macyszyn testified that an MRI scan from 2012 as well as two MRI scans from 2016 showed that plaintiff had suffered a single herniation to the L4-L5 disc that "originate[d]" "to the right" side of the spine, that the herniation (that is, the bulge) subsequently migrated toward the center of the spine after plaintiff's 2011 microdiscectomy surgeries (because those surgeries weakened the disc wall), and that the herniation migrated toward the left after the postcollision microdiscectomy surgery. Dr. Macyszyn opined

that the pre- and postcollision MRIs showed "almost [the] exact same disc herniation," and that Dr. Siddique's contrary reading was based on Dr. Siddique's review of plaintiff's spine from left-right imaging of plaintiff's spine rather than top-bottom imaging. Other evidence supported Dr. Macyszyn's opinion that there was only one disc herniation and that that herniation predated the collision: Plaintiff told his chiropractor that he experienced pain on his left side back in 2010 and 2011; plaintiff's disc started to bulge again in 2012 after the 2011 microdiscectomy surgeries; plaintiff's prior spine surgeon opined that a person, like plaintiff, with a bulging disc may not feel pain (hence explaining the reported lack of pain between 2012 and 2015); and plaintiff reported pain and weakness on his *right* side as well as his left side after the collision. On the basis of this evidence, Dr. Macyszyn opined that (1) it was "more likely than not . . . that [the] disc herniation" Dr. Siddique and plaintiff's treating doctors attributed to the collision "was there" prior to the collision and was caused—not by the accident—but instead by plaintiff's "past medical history," including his two prior surgeries, the two disc herniations, and his weight; and (2) it was "scientifically not true" that the collision caused an entirely new and different left-side injury.

Second, defendant adduced evidence that the collision was *incapable* of causing a new and distinct injury of a herniation of plaintiff's L4-L5 disc to the left. Specifically, defendant called a biomechanical engineer who opined that (1) the force of the collision would have pushed plaintiff's Infiniti to the left, thereby pushing plaintiff's *body* to the right and causing an impact on plaintiff's *right* side, not his *left* side, and (2) the force of impact on plaintiff, given defendant's slow speed at the time of impact,

11

was less than people experience in many every day activities (such as plopping one's self down onto a sofa from a height of six inches). The biomechanical engineer's opinion was corroborated, to some extent, by plaintiff's inability to "remember exactly" how his body moved in the driver's seat at the time of impact and by the absence of any bruises or visible injuries to plaintiff.

Third, defendant adduced evidence that plaintiff—at a height of six feet one inch and a weight of 325 pounds—was "morbidly obese." Being at such a weight is a "significant risk factor" that can generate back pain and also created an "increased rate of disc degeneration" between the time plaintiff stopped seeing his prior spine surgeon in 2012 and the time of the collision.

Lastly, defendant adduced evidence suggesting that plaintiff's postcollision reports of pain and injury were not to be believed. Although plaintiff insisted at trial that his prior injury caused him pain only on the *right* side of his body, plaintiff's chiropractor reported that plaintiff told him the pain and prior microdiscectomy surgeries were on his left side. As Dr. Macyszyn observed, plaintiff's reports of the "sidedness" of his injury "switche[d]" and were "inconsistent." Although plaintiff initially insisted at trial that he was not doing any "physically exerting" labor while working for his father's construction business in Florida, after being confronted (outside the presence of the jury) with surreptitious video footage showing him hauling heavy materials around construction sites, plaintiff admitted to the jury that he was lifting anywhere from 50 to 80 pounds worth of cement, ceramic tile, vanities, toilets, and tool chests. This put plaintiff in the position of insisting that his injury prevented him from sitting, standing, or lying down for too long without pain,

but that his injury still allowed him to lug around close to 100 pounds of building materials and cabinetry.

*     *     *

As this analysis indicates, there was a "substantial conflict in the evidence" on the issue of causation. This is not surprising, as questions of causation are "'ordinarily for the jury.'" (*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017, 1029-1030; see also *Toste v. CalPortland Construction* (2016) 245 Cal.App.4th 362, 369 ["When reasonable minds can differ as to the inferences to be drawn from the evidence, causation must be decided by the jury as an issue of fact."].) More to the point, this conflict precludes the grant of a new trial as being "against law."

## III.   The Trial Court's Contrary Ruling

The trial court's finding of "clear and uncontradicted" "evidence" that "[p]laintiff was injured as a result of the accident" rests exclusively on two passages of Dr. Macyszyn's testimony. First, the court cited Dr. Macyszyn's deposition testimony, which was read at trial, that plaintiff suffered an "exacerbation of a previous radiculopathy" "after" the collision. Second, the court cited the following exchange between Dr. Macyszyn and plaintiff's counsel:

Q:    [Plaintiff] had an injury. Correct, sir, from this collision?

A:    Yes. A minor osteo ligament strain; that is correct.

Q:    That is still an injury . . .?

A:    That's correct.

We conclude that these two passages do not vitiate the otherwise substantial conflict of evidence, detailed above, on the issue of causation. We reach this conclusion for three reasons.

13

First, both passages of Dr. Macyszyn's testimony cited by the trial court are premised solely on Dr. Macyszyn's acceptance of plaintiff's reports of pain. With regard to the first passage, Dr. Macyszyn testified that he "classified" plaintiff as experiencing an "exacerbation of a prior radiculopathy" based on plaintiff's "report[] of leg pain." Thus, the first passage in which Dr. Macyszyn testifies that the collision "exacerbate[ed]" plaintiff's "previous radiculopathy" means nothing more than that plaintiff reported pain after the collision. Because the sole "proof" of plaintiff's pain is plaintiff's own testimony, Dr. Macyszyn's alleged "concession" of "exacerbation" was premised entirely on accepting plaintiff's testimony as true. With regard to the second passage, Dr. Macyszyn explained that the "strain" plaintiff suffered also came solely from plaintiff's reports of pain. Specifically, Dr. Macyszyn testified: "[B]ased on the fact that [plaintiff] had pain, I said he had a strain." Thus, the second passage in which Dr. Macyszyn testifies that plaintiff suffered the "injury" of a "strain" also means nothing more than that the collision caused plaintiff to feel pain. Because the sole "proof" of plaintiff's pain is plaintiff's own testimony, Dr. Macyszyn's alleged "concession" of "injury" is also premised entirely on accepting plaintiff's testimony as true. Indeed, Dr. Macyszyn testified that there was "nothing objective[]" in plaintiff's medical records substantiating his subjective complaints. Although Dr. Macyszyn testified that he, as a medical professional, was obligated to accept plaintiff's subjective reports of pain as true and that he had no reason to believe that plaintiff was being untruthful, the jury was free to come to a contrary conclusion because juries are free to reject the factual premises of an expert's opinion. (*In re Welch* (2015) 61 Cal.4th 489, 519 ["An

14

expert's opinion is only as good as the facts upon which his or her opinion is based."]; see, e.g., *Maples v. Kern County Assessment Appeals Bd.* (2002) 103 Cal.App.4th 172, 198 [expert's opinion may be rejected if its premise is unsupported].)  Here, as noted above, there was ample evidence presented at trial casting doubt on plaintiff's credibility; thus, the jury was free to reject plaintiff's reports of pain and, in so doing, to reject Dr. Macyszyn's testimony of exacerbation and injury premised solely on those reports of pain.  (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 455 ["A jury may conclude that a plaintiff who testifies falsely concerning injuries suffered no injuries."]; see generally *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204 ["the credibility of witnesses is generally a matter for the trier of fact to resolve"].)  What is more, *we* cannot overturn the jury's implicit finding that plaintiff was not credible because plaintiff's testimony was not so "'clear, positive, and of such a nature that it cannot rationally be disbelieved'" (*Beck Development Co.*, at p. 1204); to the contrary, there was ample grounds on which the jury could find plaintiff not to be credible.

Second, the trial court's analysis focused on the two snippets of Dr. Macyszyn's testimony outside of their context. Specifically, the court did not account for the fact that Dr. Macyszyn's alleged concessions of exacerbation and injury were premised entirely on plaintiff's subjective reports of pain.  The court also did not reconcile those two snippets with Dr. Macyszyn's ultimate opinion that the collision did *not* cause plaintiff any further disc herniation or injury.  How could Dr. Macyszyn at the same time concede *and* dispute causation?  In evaluating the substantiality of evidence underlying a jury's

15

verdict, a trial court must look to the evidence *as a whole*. (*Daugherty v. City & County of San Francisco* (2018) 24 Cal.App.5th 928, 956 ["testimony taken out of context does not constitute substantial evidence"]; *People v. Smith* (2018) 4 Cal.5th 1134, 1165 [same].)

Lastly, even if we were to construe Dr. Macyszyn as espousing contrary opinions at the same time—namely, that the collision caused no injury (based on his ultimate opinion) *and* that the collision exacerbated plaintiff's radiculopathy and caused a strain (based on the snippets cited by the trial court)—it was up to the jury to decide which portions of Dr. Macyszyn's testimony to credit and which not to credit. (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67 ["It is well settled that the trier of fact may accept part of the testimony of a witness and reject another part even though the latter contradicts the parts accepted."].) The fact that the jury credited one portion (the ultimate opinion) but not the other (the snippets) does not mean that there was no substantial evidence to support a finding of no causation based on the ultimate opinion.

## IV.   Plaintiff's Further Arguments

Plaintiff makes two categories of arguments in support of the trial court's ruling. We will discuss each separately.

### A.   *The jury's special verdict <u>was</u> "against law"*

Plaintiff offers three further reasons (beyond the rationale offered by the trial court) why the trial court's finding that the jury's "no causation" finding was "against law."

First, plaintiff contends that the biomechanical engineer's testimony cannot be considered as part of the substantial evidence supporting the jury's finding of no causation because the engineer (1) offered no medical opinions and (2) was unqualified

16

to do so anyway. Of course, the reason why the biomechanical engineer did not offer any medical opinions was because, as explained below, the trial court partially granted plaintiff's motion to preclude such testimony. In any event, the engineer's more limited testimony regarding the physics of the accident still contributed to the conflict in the evidence regarding causation: The engineer testified about the direction of the forces caused by the impact (pushing plaintiff away from the driver's side door) and the magnitude of those forces (less than many everyday activities), and the jury was free to draw reasonable inferences from that testimony about the physics of the collision. Contrary to what plaintiff asserts on appeal, plaintiff's trial testimony that he was "shook up" by the collision does not somehow negate the biomechanical engineer's testimony; if anything, it demonstrates that there was a conflict of evidence on the physics of the collision that was properly left for the jury's resolution.

Second, plaintiff contends that the jury's verdict was unsupported due to plaintiff's testimony that he suffered no back or leg pain between 2012 until the collision. Again, however, plaintiff's testimony is not some sort of evidentiary Kryptonite that negates all of the contrary evidence presented by defendant or negate the jury's power to find plaintiff not to be credible. (Accord, *People v. Lee* (2011) 51 Cal.4th 620, 635 ["It was for the jury to decide whether [a] witness[] [is] credible, either in whole or in part."].)

Lastly, plaintiff contends that appellate courts must defer to credibility findings made by the jury. Indeed they must. Where, as is the case when reviewing a new trial granted because the verdict is allegedly "against law," our task is to assess whether there was substantial evidence to support *the jury's*

17

*verdict*. The jury's verdict here necessarily rested on a subsidiary finding that plaintiff was not a credible witness, and we may not gainsay that subsidiary finding. Plaintiff cites cases requiring appellate courts to defer to the *trial court's* credibility findings in granting a new trial motion, but those cases deal with new trials granted due to the insufficiency of the evidence. As noted above, that is not the ground for the trial court's ruling in this case, so the authority plaintiff cites is irrelevant.

**B.** *Alternative grounds for affirmance*

Section 657 instructs that an appellate court shall "affirm" an order granting a new trial upon any possible ground stated in the moving papers even if it is not relied upon by the trial court (*except* insufficiency of the evidence or excessive damages, which must be relied upon by the trial court as well). (§ 657; *Sanchez-Corea*, *supra*, 38 Cal.3d at p. 905.) On appeal, plaintiff advances two alternative grounds for affirming the grant of a new trial.[3]

1. *Instructional error*

Plaintiff argues that the trial court erred in instructing the jury that it must decide whether there was causation (and, relatedly, in allowing the issue of causation to be submitted to the jury in the special verdict form). This was error, plaintiff urges, because the uncontroverted evidence dictated a finding of causation. Although instructional error can constitute an "error of law" that may support a new trial under subdivision (7) of section 657 (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 205), there was no instructional error here. As described above, the evidence on the issue of causation was disputed and there was substantial evidence to support a jury

---

[3] Plaintiff does not advance the improper vouching argument that he pressed below, so we will not discuss it further.

18

finding of "no causation." As a result, the court properly submitted that question to the jury. (E.g., *Hart v. Wielt* (1970) 4 Cal.App.3d 224, 235 [where "substantial evidence" supports a finding, trial court does not err in instructing on the issue and submitting to the jury]; *Kasunich v. Kraft* (1962) 201 Cal.App.2d 177, 186 ["Each party is entitled to have his theory . . . of the case submitted to the jury . . . where there is substantial evidence in the record justifying the giving of the instructions."].)

>    2.    *Admission of biomechanical engineer's testimony*

Plaintiff also argues that the trial court erred in allowing defendant's biomechanical engineer to testify at all. The erroneous admission of evidence constitutes an "error of law" that can justify a new trial. (§ 657, subd. (7); *Richard v. Scott* (1978) 79 Cal.App.3d 57, 63-64 [error in admitting expert's testimony is a ground for a new trial].) We review a trial court's evidentiary rulings for an abuse of discretion. (*People v. Flores* (2020) 9 Cal.5th 371, 409.)

>    a.    Pertinent facts

Defendant sought to call the biomechanical engineer to opine on (1) the direction and magnitude of the forces involved in the collision, and (2) how those forces could not have caused plaintiff's injuries. In response to a pretrial motion by plaintiff arguing that none of the 16 studies the engineer cited involved persons with prior spinal injuries, the trial court ruled that the engineer could *not* testify about how the forces affected plaintiff specifically (that is, the second opinion), but could testify about the forces (that is, the first opinion) and could be cross-examined on how the studies regarding those forces did not involve persons like plaintiff with prior spinal injuries. As detailed above, the

19

engineer limited his opinions to those regarding the direction and magnitude of the forces, and did *not* tie them to plaintiff's injuries. Plaintiff also extensively cross-examined the engineer on how the 16 studies did not involve persons with prior spinal injuries.

b. Analysis

The trial court did not abuse its discretion in allowing the biomechanical engineer to discuss the forces involved in the collision notwithstanding the fact that the studies the engineer cited did not involve persons with prior spinal injuries. The engineer explained that the studies merely "highlighted [his] opinions" and did not constitute "the totality of literature" he had relied upon in coming to his conclusions. More to the point, plaintiff cites no authority for the proposition that an expert's opinion is subject to exclusion if the representative studies the expert relies upon do not involve subjects identical to the parties in the case. (Cf. Evid. Code, §§ 801, 802, 720.) Rather than a ground for exclusion, these differences are grist for the mill of cross-examination. (E.g., *People v. Fulcher* (2006) 136 Cal.App.4th 41, 54 ["[a]ny erroneous factual assumptions by the experts could be addressed through cross-examination of the experts"].) Plaintiff cites *Mason v. Rizzi* (De. 2004) 89 A.3d 32 in support of his position, but *Mason* is at best persuasive authority and, more to the point, is inapt. *Mason* held that a trial court did not abuse its discretion in excluding testimony from a biomechanical engineer who sought to offer opinions regarding how the forces of an accident affected a party with prior spinal injuries when the engineer's underlying data did involve persons with similar prior injuries. (*Id.* at pp. 34-38.) The biomechanical expert in this case never offered an opinion about how the

20

accident affected plaintiff; instead, he discussed the general direction and magnitude of the forces involved as a matter of physics and math, topics that do not turn on the identity of the persons affected by those forces.  Because the expert did not relate those forces *to this plaintiff*, the concern in *Mason* is not implicated in this case.

## DISPOSITION

The order is reversed with directions to reinstate the judgment in defendant's favor.  Defendant is entitled to her costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

21